IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:20-CV-00159-KDB

ROGER DALE MORRISON,

Plaintiff,

v.

KILOLO KAJAKAZI, Acting
Commissioner of Social Security,[1]

Defendant.

ORDER

**THIS MATTER** is before the Court on Plaintiff Roger Dale Morrison's Motion for Summary Judgment (Doc. No. 17) and Defendant's Motion for Summary Judgment (Doc. No. 19), as well as the parties' briefs and exhibits. Mr. Morrison, through counsel, seeks judicial review of an unfavorable administrative decision on his Title II application for a period of disability and disability insurance benefits.

Having carefully reviewed and considered the written arguments, administrative record, and applicable authority, the Court finds that the Commissioner's decision to deny Mr. Morrison social security benefits is supported by substantial evidence. Accordingly, Plaintiff's Motion for Summary Judgment will be **DENIED**; Defendant's Motion for Summary Judgment will be **GRANTED**; and the Commissioner's decision **AFFIRMED**.

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

## I. BACKGROUND

Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-433, on September 8, 2016 (Tr. 15; *see* Tr. 188-94). Mr. Morrison alleged that he had become disabled as of March 13, 2015 (Tr. 15), when he was 47 years old (Tr. 26).

After his application was denied initially and on reconsideration, Plaintiff requested a hearing before an ALJ (Tr. 15). A hearing was held on June 28, 2019 (Tr. 37-88). On August 28, 2019, the ALJ determined that Plaintiff was not disabled (Tr. 15-28). After the Appeals Council declined to review it, the ALJ's decision became the Commissioner's final decision for the purposes of judicial review (Tr. 1-6) and Mr. Morrison has timely requested judicial review in this Court pursuant to 42 U.S.C. § 405(g).

## II. THE COMMISSIONER'S DECISION

The ALJ used the required five-step sequential evaluation process established by the Social Security Administration to determine if Mr. Morrison was disabled during the relevant period.[2] "Disabled" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

---

[2] The ALJ must determine the following under the five-step sequential evaluation: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g). The claimant has the burden of production and proof in the first four steps, but the Commissioner must prove the claimant is able to perform other work in the national economy despite the claimant's limitations. *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015).

At step one, the ALJ found that Mr. Morrison last met the insured status requirements of the Social Security Act on December 31, 2017 and that he did not engage in substantial gainful employment since his alleged onset date of March 13, 2015 (Tr. 17). At step two, the ALJ found that Mr. Morrison had the following severe impairments: "diabetes mellitus I (insulin dependent); diabetes mellitus polyneuropathy; coronary artery disease (status post, surgical triple bypass 1998 and 5 vessel cardiac artery bypass graft 2002); bilateral iliac stents LE (May 2018); peripheral artery disease; atherosclerosis right LE; left shoulder impingement syndrome (status post arthroscopic surgery rotator cuff repair, biceps tenodesis, debridement, subacromial decompression July 2019; osteoarthritis of AC joint and tendinitis); and obsessive compulsive disorder (germ phobia)." (Tr. 17). The ALJ considered Mr. Morrison's impairments and the listing in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR §§ 404.1520(d), 404.1525, 404.1526), and concluded at step three that Mr. Morrison's impairments do not meet or medically equal any listing. (Tr. 19-20).

At step four, the ALJ found that Mr. Morrison had the residual function capacity ("RFC") to perform light work as defined in 20 CFR § 404.1567(b) except:

> occasional climbing of ramps and stairs but never climb ladders, ropes or scaffolds. He can occasional[ly] kneel and crouch, but never crawl; and can occasionally push and pull with the left non-dominant upper extremity as well as frequently handle and finger and feel with the bilateral upper extremity. However, he can never reach overhead or reach behind the dorsal plane with the left upper extremity, but is able to frequently reach in other directions, such as front and to the side. He can have no concentrated exposure to hazardous work settings; and no concentrated exposure to extremely hot, cold or humid environments (due to exacerbation of coronary artery disease and neuropathy). He is able to understand, remember and follow instructions, but not complex instruction; able to use a common sense understanding to make work-related decisions; and able to respond appropriately to supervision and tolerate occasional interaction with supervisors and co-workers, but should have no more than superficial interaction with the public. He is able to perform routine and repetitive tasks but with a low level of work pressure defined as work not requiring production rate pace, such as assembly line work or timed task completing type of work. Further, he retains the ability to remain on task for

> 2-hours at a time, before needing a 15-minute break throughout the normal work day. Finally, he can occasionally able to adapt to routine changes in the work setting.

(Tr. 20).

With these restrictions, the ALJ found that Mr. Morrison could not perform any of his past relevant work. (Tr. 26). At step five, the ALJ found that considering Mr. Morrison's age, education, work experience, and residual functional capacity, he could perform other jobs that exist in significant numbers in the national economy. (Tr. 27). Adopting the VE's testimony, the ALJ found that Mr. Morrison could perform the requirements of representative occupations such as Router (DOT # 222.587-038) and Price Marker (DOT # 209.587-034). (Tr. 27). Accordingly, the ALJ concluded that Mr. Morrison had not been under a disability as defined in the Social Security Act, from March 13, 2015, through December 31, 2017, the date last insured. (Tr. 28).

### III. LEGAL STANDARD

District courts review the ALJ's Social Security disability determination pursuant to the standard set out in 42 U.S.C. § 405(g). The decision of the ALJ must be upheld if the ALJ "applied the correct legal standards" and if the "factual findings are supported by substantial evidence." *Bird v. Comm'r of SSA*, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015) (internal quotation marks omitted). Though the "threshold for such evidentiary sufficiency is not high," it requires that "more than a mere scintilla" of evidence support the ALJ's findings. *Shinaberry v. Saul*, 952 F.3d 113, 120 (4th Cir. 2020). In undertaking this review, it is not the district court's place to "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585,

589 (4th Cir. 1996). However, "we do not reflexively rubber-stamp an ALJ's findings." *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017).

## IV. DISCUSSION

On appeal to this Court, Mr. Morrison contends the ALJ erred (1) in failing to resolve the conflict between the Dictionary of Occupational Titles ("DOT") and the vocational testimony; (2) in failing to evaluate the opinion of the examining psychiatrist; (3) in failing to evaluate Mr. Morrison's mental-health treatment based on an accurate and complete assessment of the record; (4) in failing to reconcile Mr. Morrison's physical limitations with the requirements of light work; and (5) in failing to evaluate lay testimony. Additionally, Mr. Morrison argues that the Court should grant him a new hearing on his 2012 application that was denied by an unconstitutionally appointed ALJ.

The ultimate question before the ALJ was whether Plaintiff became disabled at any time. The Court has conducted a careful but limited review of the ALJ's decision consistent with our role as a reviewing court as described above and finds that the ALJ applied the correct legal standards and his conclusion that Plaintiff was not disabled is supported by substantial evidence.

The Court will briefly further address Mr. Morrison's claim that the ALJ failed to resolve the conflict between the DOT and the vocational testimony. Mr. Morrison argues the ALJ failed to elicit a sufficient explanation for the apparent conflict between the vocational testimony and DOT. The Court disagrees. The ALJ found that Mr. Morrison "can never reach overhead or reach behind the dorsal plane with the left upper extremity, but is able to frequently reach in other directions, such as front and to the side." (Tr. 20). During the ALJ's examination of the VE, the VE testified that an individual with Mr. Morrison's age, education, work experience, and RFC would be able to perform the requirements of a Router (DOT 222.687-022), Ticket Seller (DOT #

5

211.467-030), and Price Marker (DOT 209.587-034). (Tr. 82). The ALJ subsequently asked the VE "Is your opinion consistent with the Dictionary of Occupational Titles and its companion publication, the SCO?" The VE responded "[i]t was except when considering reaching in different directions. So, for multiple examples, reaching overhead is classified as frequently—or reaching in general is classified as frequently; however, based off of my experience, reaching overhead is not done frequently in those positions." (Tr. 82).

Social Security Ruling 00-4p ("SSR 00-4p") states a VE's testimony "generally should be consistent with occupational information [in the DOT]." However, the DOT does not always contain all the necessary information about an occupation. SSR 00-4p (stating that a VE's testimony "can include information not listed in the DOT"); *see also English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993) ("[i]nformation contained in the DOT is not conclusive evidence of the existence of jobs in the national economy.").

Accordingly, neither the DOT nor a VE's testimony takes precedent when there is an apparent unresolved conflict between them. SSR 00-4p. Therefore, it is left to the ALJ to "resolve the conflict by determining if the explanation given by the VE… is reasonable and provides a basis for relying on the VE… testimony rather than on the DOT information." *Id*. A reasonable explanation for an apparent conflict includes "information not listed in the DOT" and that a VE's "experience" may be the source of such information. *Id*. ("Evidence from VEs or VSs can include information not listed in the DOT…. Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling").

The VE testified that the DOT did not contain information about "reaching in different directions" and that her testimony, about overhead reaching not being frequent, was based on her "experience" (Tr. 82). The ALJ accepted the VE's explanation and therefore found that her testimony was consistent with the DOT (Tr. 27).

Mr. Morrison argues that *Pearson v. Colvin*, 810 F.3d 204 (4th Cir. 2015) and *Lance v. Saul*, No. 1:20-CV-00070, 2021 WL 1316016 (W.D.N.C. Apr. 8, 2021) require this Court to remand. However, these cases can be distinguished from the case before the Court. In *Pearson*, unlike here, neither the ALJ nor the VE noted any apparent conflict. *Pearson*, 810 F.3d at 206. In this case, the ALJ recognized the conflict and asked the VE about it. The VE then gave her reasoning as to why Mr. Morrison could perform the jobs even with his inability to reach overhead or reach behind with the left arm. (Tr. 20).

In *Lance*, this Court remanded because of two errors that concerned the Court. First, in *Lance* the VE wrongly asserted that there were no conflicts between his testimony and the DOT. *Lance v. Saul*, No. 1:20-CV-00070-KDB, 2021 WL 1316016, at *4 (W.D.N.C. Apr. 8, 2021). As discussed above, that is not the case here. Secondly, in *Lance* the ALJ failed to resolve the apparent conflict between the VE and the DOT. *Id.* In this case, the ALJ resolved the conflict by eliciting an explanation for the conflict from the VE and finding that the VE adequately and reasonably explained the conflict between her testimony and the information in the DOT (Tr. 81-82; Tr. 27).

In sum, the Court finds that the ALJ did properly resolve the conflict between the VE testimony and the DOT. Therefore, there is substantial evidence to support the ALJ's decision.[3]

---

[3] The Court makes no finding as to the petition for a rehearing of the 2012 application on the grounds that it was denied by an unconstitutionally appointed ALJ. Claimant's 2012 application is not before the Court; accordingly, in this appeal the Court declines to reach to decide it.

## V. ORDER

**NOW THEREFORE IT IS ORDERED:**

Plaintiff's Motion for Summary Judgment (Doc. No. 17) is **DENIED**; Defendant's Motion for Summary Judgment (Doc. No. 19) is **GRANTED**; and the Commissioner's decision is **AFFIRMED.**

Signed: September 29, 2021

Kenneth D. Bell
United States District Judge